IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JOSE RAMON LOPEZ MATA,<br><br>Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES, LLC,<br><br>Defendant. | Case No.:<br><br><br>**JURY TRAIL DEMANDED** |

# COMPLAINT

Plaintiff Jose Ramon Lopez Mata ("Plaintiff") by and through his counsel brings this action against defendant Equifax Information Services, LLC ("Defendant" or "Equifax") and alleges, based upon personal knowledge, information and belief, and the investigation of counsel, as follows:

## INTRODUCTION

1. This is an action to recover actual, statutory, and punitive damages, costs, and attorney's fees for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et. seq*. ("FCRA").

2. Defendant reported an auto loan referencing a $29,767.00 high credit account with a balance of $1,251.00 opened in or around May 2020 and an account no. ending in 3005, which did not belong to Plaintiff (the "US Bank Account").

1

3. The US Bank Account should not have been included in Plaintiff's consumer reports because it belonged to another consumer with a different first name, last name, address, and Social Security Number than Plaintiff (the "Non-Consumer").

4. Plaintiff disputed the inaccurate reporting at least five (5) times and Defendant failed to conduct a reasonable reinvestigation and remove the US Bank Account from Plaintiff's consumer report in response to each of his disputes.

5. As a result of Plaintiff's inaccurate reporting, Plaintiff suffered damages including but not limited to, damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumer's personally identifying information and credit information mixed into Plaintiff's credit file.

## PARTIES

6. Plaintiff resides in New Braunfels, Texas, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

7. Defendant is a limited liability company with a principal place of

business located at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309, and is authorized to do business in the State of Georgia, including within this District.

8. Defendant is a "consumer reporting agency" as defined in 15 U.S.C. §1681a(f) and Defendant is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over Plaintiff's claims under 28 U.S.C. §1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

10. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Defendant resides in this District.

## FACTS

### Plaintiff Applies for a Mortgage with Movement Mortgage

11. Plaintiff, a recent retiree, recently relocated from California to Texas with his family and to purchase a suitable new retirement home for his family, including his wife, growing children, and elderly mother-in-law.

12. To that end, Plaintiff arranged for the sale of his home in California and found the perfect home to move himself and his family into in Texas.

13. These efforts, however, have been hampered because Equifax has and

3

continues to report inaccurate information about Plaintiff.

14. Upon information and belief, Defendant mixed or merged Plaintiff's consumer file with that of the Non-Consumer.

15. On February 7, 2025, Plaintiff applied for a $230,000.00 mortgage from Movement Mortgage ("Movement").

16. On February 8, 2025, in connection with the mortgage application, Movement obtained a Xactus Credit Report that included Plaintiff's Equifax, Experian and TransUnion credit reports.

17. The report was finalized and delivered to Movement the same day.

18. Upon reviewing the report, Movement determined that Plaintiff did not meet its underwriting criteria.

19. Specifically, Defendant reported the US Bank Account which did not belong to Plaintiff.

20. Upon information and belief, neither Trans Union or Experian reported the US Bank Account on Plaintiff's credit reports.

21. Plaintiff was confused and distressed by the reporting and immediately explained to Movement that the US Bank Account did not belong to him and should not be included on his consumer report.

22. Plaintiff had already made all the preparations to sell his home in California and move his family to Texas and could not afford to lose out on a

mortgage.

23. On February 10, 2025, a representative of Movement arranged a conference call between Xactus and US Bank to determine the origins of the US Bank Account.

24. Upon information and belief, during the conference call between Plaintiff, Xactus, and US Bank, it was confirmed that the US Bank Account belonged to the Non-Consumer, an unrelated male named Jose Luis Ramona Mata, and not to Plaintiff.

25. Plaintiff's first name is Jose Ramon and Plaintiff's last name is Lopez Mata.

26. The Non-Consumer has a different first and last name, address, and Social Security Number than Plaintiff.

27. Defendant inaccurately published information which did not belong to Plaintiff in their consumer report to Xactus.

28. In preparing and selling a consumer report about Plaintiff, wherein Defendant published inaccurate information about Plaintiff to Xactus, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

**Plaintiff's February 2025 Disputes to Defendant**

29. On February 14, 2025, while traveling to Texas from California with

5

his family, and dedicated to receiving a high value mortgage, Plaintiff disputed with Defendant via telephone.

30. On February 16, 2025, Plaintiff arrived in Texas from California with his family and moved into a temporary AirBnB establishment pending the removal of the US Bank Account from his consumer report and the successful receipt of a mortgage to purchase a home.

31. On February 24, 2025, Defendant completed their re-investigation following Plaintiff's dispute and failed to remove the US Bank Account from Plaintiff's consumer report.

32. On February 28, 2025, Plaintiff disputed with Defendant via telephone again, explaining that the US Bank Account belonged to a different consumer and not to Plaintiff.

33. On March 15, 2025, Defendant completed their re-investigation following Plaintiff's second dispute, and once again failed to remove the US Bank Account from Plaintiff's consumer report.

34. Despite submitting two formal disputes with Defendant in February 2025, Plaintiff did not receive any meaningful resolution or correction from Defendant regarding the inaccurate and harmful information appearing in his credit file.

35. Despite Plaintiff's disputes, Defendant failed to conduct a reasonable

6

reinvestigation of Plaintiff's February 2025 disputes and failed to delete the disputed information in violation of 15 U.S.C. § 1681i(a)(1)(A).

### Plaintiff Applies for a Mortgage with Cavenaugh Crew

36. Plaintiff found himself worrying that he would not be able to receive a mortgage from Movement and began looking for other options.

37. To that end, on March 14, 2025, Plaintiff submitted an application for a $220,000.00 mortgage with Cavenaugh Crew powered by Edge Home Finance ("Cavenaugh Crew") through United Wholesale Mortgage ("UWM").

38. On the same day, in connection with the mortgage application, UWM obtained a CoreLogic Tri-Merge Credit Report that included Plaintiff's Equifax, Experian and TransUnion credit reports.

39. The report was finalized and delivered to UWM the same day.

40. Upon reviewing the report, Cavenaugh Crew determined that Plaintiff did not meet its underwriting criteria.

41. Specifically, Defendant had reported the US Bank Account as well as personal identifying information belonging to the Non-Consumer.

42. Upon information and belief, neither Trans Union or Experian reported the US Bank Account on Plaintiff's credit reports.

43. Defendant continued to report the US Bank Account despite Plaintiff's disputes in February 2025.

44. Further, Defendant also reported the name of the Non-Consumer in their March 14, 2025, consumer report to UWM.

45. In preparing and selling a consumer report about Plaintiff, wherein Defendant published inaccurate information about Plaintiff to UWM, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

**Plaintiff's March 2025 Disputes to Defendant**

46. Determined to protect the integrity of his credit and remove demonstrably false information, Plaintiff took additional proactive steps and submitted further disputes with Defendant in

47. On March 18, 2025, Plaintiff submitted another dispute to Defendant in response to their failure to remove the US Bank Account from his consumer report following his February 28, 2025, dispute.

48. On March 18, 2025, Plaintiff also submitted a dispute to Defendant regarding their inaccurate reporting to UWM on March 14, 2025.

49. On March 19, 2025, and March 20, 2025, Defendant responded to Plaintiff's two March 18, 2025.

50. In Defendant's response to both disputes referred to Plaintiff with the Non-Consumer's name, further evidencing that the Defendant failed to correctly identify Plaintiff's file and may have improperly mixed or merged it with that of the

8

Non-Consumer.

51. Defendant also refused to correct their inaccurate reporting and continued to report the US Bank Account and the Non-Consumer's name in Plaintiff's consumer report.

52. The March 20, 2025, dispute response included an internal notation labeled "Oct 2024 mixed" in reference to Plaintiff's address.

53. Upon information and belief, the inclusion of the internal notation points towards Defendant having prior knowledge of a potential mixed or merged file in regarding to Plaintiff's consumer file.

54. Plaintiff was worried that he would not be able to afford the house he had planned to buy in Texas and that he and his family would be stuck in Texas without a home to live in.

55. On March 20, 2025, Plaintiff received notice from Cavenaugh Crew notifying him that due to the inclusion of the Non-Consumer's US Bank Account on Plaintiff's consumer report, he could only qualify for a $130,000.00 mortgage, $90,000.00 less than what he had applied for.

56. On the same day, Plaintiff received an email from Cavenaugh Crew stating as follows:

> *"Because Equifax is reporting this US bank debt on his report, he does not qualify for the amount needed to buy his house. His qualification amount is much lower due to the debt being listed."*

9

57. On March 20, 2025, Plaintiff, feeling emboldened to have the reporting corrected so that he might be able to afford a home, submitted another dispute to Defendant in the hopes that they would finally correct their reporting so that he might receive a mortgage and purchase a home.

58. On March 24, 2025, Defendant responded to Plaintiff's dispute and continues to report the inaccurate US Bank Account on Plaintiff's consumer report.

59. Plaintiff felt trapped and helpless, and in a final effort disputed directly with US Bank in or around March 2025.

60. On March 24, 2025, Plaintiff received a letter from US Bank stating that they had confirmed the US Bank Account as not belonging to him and would notify Defendant to delete the account from his consumer report.

61. Upon information and belief, Defendant has not removed the US Bank Account from Plaintiff's consumer report following March 24, 2025.

62. Despite Plaintiff's many disputes, Defendant failed to conduct a reasonable reinvestigation of Plaintiff's March 2025 disputes and failed to delete the disputed information in violation of 15 U.S.C. § 1681i(a)(1)(A).

**Plaintiff Suffered Harm as a Result of Defendant's Actions**

63. On March 31, 2025, Plaintiff received a notification from Movement stating that were it not for the inclusion of the US Bank Account in his consumer report from Equifax, he would qualify for a $230,000.00 mortgage.

64. The notification further stated that as a result of the inclusion of the US Bank Account in Plaintiff's consumer report, he could only qualify for a $190,000.00 mortgage.

65. Plaintiff had finalized the sale of his home and arrived in Texas in February 2025 and was had been living out of a costly AirBnB rental with his family since February 16, 2025.

66. On or around April 2025, Plaintiff received notice from his AirBnB landlord that he would have to vacate the premises.

67. Plaintiff and his family were forced to relocate to a different AirBnB accommodation, and remained living out of temporary housing through AirBnB until May 2025.

68. In or around May 2025, no longer able to afford living out of AirBnB temporary housing, Plaintiff made the difficult decision to withdraw $100,000.00 from his 401(k) Account in order to finance the purchase of a new home with the lower mortgage offered by Movement.

69. The withdrawal of funds came with a significant tax penalty which caused serious financial strain on Plaintiff and his family.

70. Plaintiff was forced to accept the lower loan offered by Mortgage and finance more of the payment for his home out of his own personal funds at considerable cost to himself.

71. Plaintiff had planned to move to Texas to enjoy his retirement with his family in a more financially stable setting.

72. As a result of Defendant's reporting, Plaintiff has suffered severe economic harm and emotional distress in trying to secure housing for his family.

73. Plaintiff finds himself worrying about the long reaching effects of the mixed/merged account on his consumer file with Defendant.

74. Not having a stable home for so long has severely harmed Plaintiff's home life and family structure, especially in regards to his young children and elderly mother-in-law.

75. Plaintiff and his wife were unable to seek medical treatment from the period of early February 2025 through early May 2025 due to the lack of a permanent home address.

76. Plaintiff is deeply frustrated and emotionally worn down, feeling that he has been forced to waste his limited savings on both temporary and permanent housing which would not have been necessary but for Defendant's reporting.

77. As a result of Plaintiff's inaccurate reporting, Plaintiff suffered damages including but not limited to, damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the

inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumer's personally identifying information and credit information mixed into Plaintiff's credit file.

### Plaintiff's Mixed Credit File

78. Defendant was reporting an inaccurate and unauthorized account on Plaintiff's credit file.

79. Plaintiff has never held any account with US Bank, nor has he ever authorized or cosigned a loan through them.

80. Upon information and belief, Defendant continues to mix Plaintiff's credit file with the Non-Consumer.

81. As a result of the "mixed file," Defendant made it practically impossible for Plaintiff to obtain mortgage in accordance with his actual credit score.

82. Due to Defendant's inaccurate reporting, Plaintiff was forced to incur significant expenses to extend his family's stay at an Airbnb and had to withdraw funds from his 401(k) account in order to meet to afford to purchase a home with the significantly lower value mortgage he was offered due to the inclusion of the US Bank Account.

83. Upon information and belief, this the Non-Consumer's name and US

Bank Account, were erroneously merged into Plaintiff's file as a result of a "mixed file" wherein Defendant merged Plaintiff's credit file with that of the Non-Consumer.

84. The presence of this inaccurate account and identifying information materially impacted on Plaintiff's creditworthiness and was a substantial factor in the denial of full mortgage approval, leading to severe financial, emotional, and housing-related harm to Plaintiff and his family.

85. At all times pertinent hereto, Defendant was acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant herein.

86. At all times pertinent hereto, Defendant's conduct, as well as that of their respective agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

87. Defendant is aware of these shortcomings intentionally choose not to comply with the FCRA to lower their costs.

88. As a result of Defendant's conduct, action, and inaction, Plaintiff suffered damages including but not limited to, the loss of his right to keep his private financial information confidential; the loss of his right to information about who was

viewing his private financial information and how his private financial information was improperly implicated in the credit applications of another; damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumer's personally identifying information and credit information, including inquiries, mixed into Plaintiff's credit file.

89. Defendant is aware that its credit reporting system can and does result in the mixing of consumer credit files, commonly known as the "mixed file" problem. Defendant's matching algorithms and database rules improperly associate and merge credit information from different individuals, leading to inaccurate credit reports, many times each year. These errors not only misrepresent consumers' financial histories but also expose personal and financial information to unauthorized third parties, creating risks of identity theft, privacy violations, and unjust credit denials. Despite the knowledge of these effects, Defendant's algorithms and procedures continue to allow and cause consumers' files to be inappropriately merged, interfering with their ability to access credit, employment, housing, and insurance.

90. Defendant has long been aware of the mixed file issue, as evidenced by federal enforcement actions and litigation spanning decades, including lawsuits

brought by the Federal Trade Commission, state Attorneys General, and many private consumers. Defendant has previously entered into agreements and consent decrees mandating corrective action, and Defendant has been penalized with punitive damages awards in private actions. Yet, mixed files persist.

## COUNT I

### Violations of 15 U.S.C. § 1681e(b)
### (Against Equifax)

91. Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

92. The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to ensure the "maximum possible accuracy" of consumer reports. *See* 15 U.S.C. §1681e(b).

93. On at least one occasion, Defendant prepared patently false consumer reports concerning Plaintiff.

94. Defendant mixed another consumer's personal and credit account information into Plaintiff's credit file, thereby misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness.

95. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

96. As a result of Defendant's conduct, action, and inaction, Plaintiff suffered damages including but not limited to, damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumer's personally identifying information and credit information, including inquiries, mixed into Plaintiff's credit file.

97. Defendant's conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. §1681o.

98. Plaintiff is entitled to recover attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II

### Violations of 15 U.S.C. § 1681i
### (Against Equifax)

99. Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

100. The FCRA mandates that Defendant conduct a reasonable reinvestigation of the accuracy of information "[i]f the completeness or accuracy of

any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681i(a)(1). The FCRA imposes a 30-day time limit for the completion of such an investigation. *Id*.

101. The FCRA provides that if Defendant conducts its reinvestigation of disputed information and confirms that the information is, in fact, inaccurate or it is unable to verify the accuracy of the disputed information, it is required to delete the item of information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

102. Plaintiff initiated at least five disputes with Defendant and disputed inaccurate information reporting in his credit file and requested that Defendant correct and/or delete the inaccurate, misleading, and highly damaging information belonging to an unrelated consumer.

103. Defendant failed to respond to Plaintiff's dispute and conducted *no* investigation of Plaintiff's dispute, or such investigation, if any, was so unreasonable as to allow patently false and highly damaging information to remain in Plaintiff's credit file.

104. Defendant violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which it received notice of Plaintiff's dispute; and by failing to maintain reasonable

procedures with which to filter and verify information in Plaintiff's credit files.

105. As a result of Defendant's conduct, action, and inaction, Plaintiff suffered damages including but not limited to, damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumer's personally identifying information and credit information, including inquiries, mixed into Plaintiff's credit file.

106. Defendant's conduct, actions, and inactions was willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

107. Plaintiff is entitled to recover attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or §1681o.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for an order: (i) Determining that Defendant negligently and/or willfully violated the FCRA; (ii) Awarding Plaintiff actual,

statutory, and punitive damages as provided by the FCRA; (iii) Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and (iv) Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

RESPECTFULLY SUBMITTED on this 28th day of May, 2025.

By:*/s/ Moshe Boroosan*
Moshe Boroosan, GA Bar #744128
**CONSUMER ATTORNEYS**
68-29 Main Street
Flushing NY 11367
T: (718) 887-2926
F: (718) 247-8020
E: mboroosan@consumerattorneys.com

*Attorneys for Plaintiff,*
*Jose Ramon Lopez Mata*